**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

NEDELTCHO VLADIMIROW,

Petitioner,

v. CIVIL ACTION NO. 2:24-cv-00529
(Criminal No. 2:20-cr-00054-01)

UNITED STATES OF AMERICA,

Respondent.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the Petitioner's September 26, 2024 *Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody* (Document 220) brought on the grounds that his counsel was ineffective in failing to request an interpreter despite his request, in failing to object to illegally obtained photos and inaccurate expert testimony, in failing to present critical exculpatory evidence, in neglecting to impeach key government witnesses, and further, that the cumulative effect of his counsel's errors amounted to ineffective assistance of counsel.

By *Standing Order* (Document 222) entered on September 27, 2024, this action was referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636. On April 24, 2026, the Magistrate Judge submitted a *Proposed Findings and Recommendation* (Document 245) wherein it is recommended that this Court dismiss the Petitioner's § 2255 motion and remove this matter from the Court's docket. Objections to the

Magistrate Judge's *Proposed Findings and Recommendation* were due by June 17, 2026, after the Court granted a motion to extend the deadline The Petitioner timely filed his *Objections to Proposed Findings and Recommendation (Document No. 245)* (Document 250) on June 16, 2026.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Magistrate Judge's PF&R sets forth the factual and procedural background of this case in detail. The Court hereby incorporates those factual findings, but to provide context for the ruling contained herein, provides the following summary.

Following a jury trial, Mr. Vladimirov was convicted of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) as charged in Count One, and three counts of money laundering, in violation of 18 U.S.C. § 1957(a) as charged in Counts Two, Three, and Four.[1] On January 21, 2022, the Court imposed a sentence of 97 months, to be followed by a three-year term of supervised release. He filed a direct appeal challenging his conviction, and the Fourth Circuit affirmed.

During the trial, the United States presented evidence that Mr. Vladimirov operated a mobile pawnshop business in which he purchased stolen goods from shoplifters, or "boosters," for around 30 percent of their anticipated sale value, and would in turn, sell those goods on eBay. Specifically, the United States presented testimony of four shoplifters who testified that they stole items from retail stores and sold them to Mr. Vladimirov. The United States also presented testimony of several other witnesses, including Jose Varela, Herbert Shelton, and Nicholas Niehaus, who were retail crime investigators.[2] The United States introduced several items into evidence, including photos of products that were found in Mr. Vladimirov's home and summary

[1] The superseding indictment filed against Mr. Vladimirov on February 24, 2021, included an additional charge of fraud conspiracy, which was later dismissed without prejudice.
[2] Mr. Varela and Mr. Niehaus were both qualified as expert witnesses.

charts outlining the number of products sold on Mr. Vladimirov's eBay account during certain periods. Mr. Vladimirov testified in his own defense and presented testimony from a police officer who sold Mr. Vladimirov a used camera and a used computer.

Mr. Vladimirov was first represented by Assistant Federal Public Defender Rachel E. Zimarowski. Following a letter by Mr. Vladimirov requesting new counsel and a motion by his attorney to withdraw as counsel, Judge Aboulhosn issued an order on February 25, 2021, permitting Ms. Zimarowski to withdraw. Judge Aboulhosn appointed CJA attorney Timothy J. Lafon to represent Mr. Vladimirov for the remainder of the proceedings. Prior to trial, Mr. Vladimirov became dissatisfied with Mr. Lafon's representation and unsuccessfully sought new counsel. Mr. Vladimirov's trial was held July 19, 2021, through July 21, 2021. At the close of the United States' case, Mr. Lafon moved for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure as to Counts One through Four and renewed the motion at the close of the Defendant's case, which this Court denied. The Fourth Circuit appointed new counsel to represent him on appeal.

Mr. Vladimirov seeks to overturn his conviction based on allegations that his trial counsel was ineffective. He asserts that his attorney failed to request an interpreter despite his request and limited proficiency in English, causing him to be incapable of fully understanding the proceedings, that his attorney failed to object to the introduction of unlawfully obtained photos and inaccurate expert testimony that lacked sufficient scientific basis, and that his attorney failed to present exculpatory evidence, including evidence of his tax records showing that he paid income taxes on his business earnings. He also claims that his attorney failed to investigate and impeach confidential informants, thereby failing to show their potential bias and motivation to provide false

testimony in exchange for leniency and that his attorney failed to investigate eBay sales to disprove allegations of selling stolen goods, arguing that an investigation of sales records would have shown that the sales were legitimate. Lastly, he contends that the cumulative effect of his attorney's errors[3] amounted to ineffective assistance of counsel. The Petitioner requested an evidentiary hearing, contending that it is necessary under § 2255(b) and would be useful to the Court.

The Petitioner's trial counsel submitted affidavits responding to his allegations, and the United States filed a response in opposition to his motion. The matter is ripe for review.

## STANDARD OF REVIEW

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). When reviewing portions of the PF&R de novo, the Court will consider the fact that the Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

[3] The Petitioner asserts that Mr. Lafon's errors also include failure to object to illegally obtained evidence and false testimony, failure to prepare him for trial, denial of the right to a speedy trial, failure to object to fabricated evidence and failure to request an instruction, failure to file motions to suppress, failure to challenge his arrest and statements made during custodial interrogation, and failure to challenge improper jury selection.

## DISCUSSION

Magistrate Judge Aboulhosn carefully and thoroughly outlined the legal standards applicable to claims of ineffective assistance of counsel. He found that the Petitioner failed to establish ineffective assistance of counsel regarding the failure to request an interpreter. Judge Aboulhosn noted that he could not find any "evidence in the record supporting the Movant's current assertion that he could not understand the underlying proceedings due to a language barrier," pointing to Mr. Lafon's affidavit explaining the Petitioner's ability to effectively communicate in English and the Petitioner's *pro se* filings, which evidence his "advanced ability to communicate in the English language" and "his thorough understanding of the legal system."[4] (PF&R at 13.) As to the Petitioner's claim of alleged ineffectiveness for failure to object to inaccurate expert testimony, Judge Aboulhosn found that the Petitioner's claim that Mr. Lafon acted ineffectively by failing to challenge unreliable expert testimony was without merit. He noted that a review of the record revealed that Mr. Lafon "challenged the United States' expert testimony in pretrial Motions in Limine (Document Nos. 79 and 81), trial objections (Document No. 184, pp. 6 - 13), and a post-trial motion (Document No. 148, pp. 4 – 5)." (*Id.* at 17.) As to the alleged ineffectiveness regarding failure to object to unlawfully obtained photos, Judge Aboulhosn was unable to find that Mr. Lafon "acted deficiently in failing to file a motion to suppress," given Mr. Lafon's statements that the photos were obtained through a search warrant based on evidence gathered by investigators from multiple witnesses.[5] (*Id.* at 18.)

[4] Judge Aboulhosn noted the Petitioner's agreement with Mr. Lafon that an interpreter was not needed during the Petitioner's initial appearance hearing for the superseding indictment and his failure to request an interpreter or complain of his alleged language barrier in any of his pro se filings or during later proceedings.

[5] Judge Aboulhosn found that the Petitioner was unable to demonstrate prejudice from Mr. Lafon's failure to file a motion to suppress the photos given that the Petitioner's "defense embraced the fact that [he] operated a legitimate eBay business" and the photos were consistent with such a business. (PF&R at 18.)

Judge Aboulhosn found that the Petitioner had not made the necessary showing that Mr. Lafon was ineffective in failing to present his tax records, noting that the fact that the Petitioner "paid income taxes on illegally obtained money does not provide a defense to a money laundering charge." (PF&R at 22.) Judge Aboulhosn also found that the Petitioner had not demonstrated that Mr. Lafon was ineffective in failing to investigate his eBay sales to disprove allegations of selling stolen goods. He noted that the Petitioner's "practice of selling items on eBay for market value was never in dispute" and that the United States based its case on the Petitioner purchasing brand new items well below market value and reselling them at market value.[6] (*Id.* at 24.) As to the Petitioner's claim that Mr. Lafon failed to impeach the confidential informants, Judge Aboulhosn found that the record contradicted such a claim, noting that Mr. Lafon cross-examined each of the confidential informants, who admitted that they were co-conspirators with the Petitioner, and questioned them about "their history of drug use, prior criminal activity, prior inconsistent statements, character for truthfulness, cooperation with the United States, and their immunity agreements." (*Id.* at 23.) He found that the Petitioner's claims as to cumulative error were insufficient, noting that they are conclusory and that the Petitioner's claims were largely contradicted by the record. Lastly, Judge Aboulhosn found that no evidentiary hearing was necessary because the parties' submissions and the record demonstrated that the Petitioner was not entitled to relief on any of his claims.

Mr. Vladimirov objects to the Magistrate Judge's findings related to: the need for an interpreter and resulting prejudice, his counsel's alleged failure to object to certain evidence, including photos of products found in his house, expert witness testimony, and summary charts

[6] Judge Aboulhosn found that the Petitioner could not demonstrate that he was prejudiced by his attorney's failure to present the Petitioner's eBay records given that the Unted States admitted those records in their entirety during trial.

introduced by the United States, his counsel's failure to present exculpatory evidence, specifically evidence of his tax payments, his counsel's failure to impeach the government's witnesses, his counsel's failure to address juror bias and protect his right to an impartial jury, his Speedy Trial claim and cumulative error. Lastly, Mr. Vladimirov objects to the denial of an evidentiary hearing.

*A. Failure to Request an Interpreter*

The Petitioner argues that although Magistrate Judge Abolhousn found that his *pro se* filings demonstrated his advanced ability to communicate in English, "conversational fluency is not the same as comprehension of complex legal proceedings."[7] (Objs. at 2.) He asserts that he informed "the Court that English was his second language and he might have difficulty with 'words that are specific in this system,'" and that although he did not explicitly request an interpreter, his attorney failed to inform him that he had the right to request one. (*Id.*) He further asserts that the trial transcript demonstrates that he had difficulty understanding the proceedings, pointing to his cross-examination during which he was impeached with his letter in which he explained that he had not been read Miranda rights.[8]

The Court finds the Petitioner's objections related to Mr. Lafon's alleged failure to request an interpreter unavailing. A review of the record demonstrates that the Petitioner was sufficiently proficient in English to communicate with counsel and to understand the proceedings. Prior to his trial, the Petitioner had been in the United States for 23 years. He testified during his trial, and the transcript does not suggest any difficulty understanding or responding to the questions presented

[7] He points to his July 12, 2021 letter and his testimony about not remembering being read his Miranda rights by law enforcement as proof that "he did not understand what was happening to him" and was confused given the language barrier. He further points to his statements to the Court that "he had not received discovery, did not understand what was going on, and that his lawyer was pressuring him to take a plea deal," as more evidence that he "was struggling to understand the proceedings and that his lawyer was not adequately communicating with him." (Objs. at 20-21.)

[8] He also points to Mr. Lafon providing him with only 40 pages of discovery as proof that he was unable to understand the proceedings.

by Mr. Lafon or Mr. Tessman. Furthermore, as Judge Aboulhosn correctly indicated, the Petitioner filed several *pro se* motions, demonstrating his "advanced ability to communicate in the English language as well as his thorough understanding of the legal system." (PF&R at 13.) Beyond his statement during his arraignment that he may have trouble understanding "words that are specific in this system,"[9] (Document 181 at 4:1-4.), the Petitioner has not pointed to any evidence in the record indicating that he truly had trouble understanding the proceedings and that Mr. Lafon was aware of his need for an interpreter.[10] The Petitioner has not demonstrated Mr. Lafon was ineffective by failing to request an interpreter.

Had Mr. Lafon been deficient in failing to request an interpreter or informing the Petitioner of the ability to request one, the Petitioner has failed to show any resulting prejudice. Judge Aboulhosn inquired into whether the Petitioner needed an interpreter during his arraignment hearing for the superseding indictment, and the Petitioner agreed with Mr. Lafon that an interpreter was not needed. (Document 181 at 3:17-4:24.) At no point during later proceedings, including his trial, did he inform the Court that he was having difficulty understanding those proceedings or that he needed an interpreter. Instead, the record demonstrates the Petitioner's relative sophistication and ability to understand and communicate with no difficulty.

The Petitioner is unable to demonstrate prejudice and his objections regarding an interpreter must be overruled.

---

[9] Despite making this statement, the Petitioner agreed with his attorney that he would not need an interpreter for his arraignment after Judge Aboulhosn asked whether an interpreter was needed.

[10] In his affidavit, Mr. Lafon states that he saw no need to request an interpreter given that he and the Petitioner had no problems communicating in English and that the Petitioner "had an understanding and no difficulty that the Affiant could perceive in understanding all portions of the litigation." (Document 227 at 2.) Moreover, when asked by Judge Aboulhosn about the need for an interpreter, Mr. Lafon stated that he did not believe one was needed because the charges in the superseding indictment were not "dramatically different from those in the initial indictment that's been reviewed with [the Petitioner] in detail," and that he had "no difficulty discussing it with him." (Document 181 at 4:14-21.) He further indicated that he would evaluate whether one was needed after the hearing.

*B. Failure to Object*

*(1) Photos*

The Petitioner asserts that the Magistrate Judge accepted Mr. Lafon's explanation that the search warrant, used to obtain the photos, was valid without further review. He contends that the warrant affidavit relies on hearsay from the boosters with no corroboration, and that the affidavit "merely recites their statements without any indicia of reliability" and without any indication that the informants had provided accurate information in the past or had previously been convicted for making false statements. (Objs. at 14.) He argues that the surveillance conducted on January 29, 2019, did not establish probable cause because "[t]he officer merely observed Kersey enter Movant's car with a small box and exit without it," which "is consistent with a legitimate transaction." (*Id.*) He also contends that the warrant was issued by a state magistrate judge for charges under W. Va. Code § 61-3A-7, West Virginia's retail theft statute, and because the fruits of that warrant were used to build the federal case against him, if the state warrant is invalid, then any evidence derived from that warrant must be suppressed. He asserts that the Magistrate Judge failed to review the warrant and merely relied on Mr. Lafon's affidavit.

The Court finds the objections related to the photos to be unpersuasive given that there was no legal basis upon which a reasonable attorney could move to suppress the photos.[11] The Petitioner's assertions, as well as Mr. Hedrick's testimony regarding the investigation made during the Petitioner's preliminary and detention hearing, demonstrate that the search warrant used to obtain the photos was supported by probable cause. Investigators received statements from

[11] The Court notes that it appears the Petitioner failed to submit the search warrant and accompanying affidavit with his objections and prior submissions. Regardless, the assertions in his objections, accepted as true, do not demonstrate that Mr. Lafon was ineffective in failing to challenge the introduction of the photos on the grounds that the search warrant was defective.

multiple individuals that they were stealing items from retail stores to sell to the Petitioner.[12] In addition, Investigators conducted surveillance of the Petitioner, during which they observed the Petitioner purchasing items from known boosters, as well as controlled sales, both of which corroborated the informants' statements. This evidence was more than adequate to establish probable cause that the Petitioner was likely engaged in a fencing operation and since there was probable cause to support the issuance of the search warrant, Mr. Lafon was not ineffective for failing to file a motion to suppress the photos, obtained as a result of its execution.

Had Mr. Lafon been ineffective, the Petitioner was not prejudiced by Mr. Lafon's failure to file a motion to suppress the photos. The evidentiary value of the photos was minor compared to the rest of the United States' case, which primarily relied on testimony of multiple witnesses, including the confidential informants. Moreover, as Judge Aboulhosn determined, the photos, which show products and other evidence inside the Petitioner's home, contain nothing that contradicts the Petitioner's defense that he operated a legitimate business on eBay. The Petitioner's objections related to the photos should be overruled.

[12] The Petitioner argues the affidavit supporting the search warrant relies almost entirely on hearsay by the informants. However, as the Fourth Circuit has determined, "probable cause may be founded upon hearsay and information received from informants." *United States v. DeQuasie*, 373 F.3d 509, 518 (4th Cir. 2004). The Petitioner further argues that there is no independent corroboration for the informants' statements and that there is no indication that the statements are reliable given that the informants have not provided accurate information in the past. However, multiple informants giving consistent statements about selling stolen products to the Petitioner is likely sufficient by itself under these circumstances to corroborate each of their individual statements, demonstrating that the information provided is likely accurate. *See United States v. Davis*, 94 F.4th 310, 316-17 (4th Cir. 2024) (explaining that statements made by "a known informant with unknown credibility" are more reliable and therefore require less corroboration as compared to an anonymous informant, given that a known informant "exposes himself to possible criminal prosecution or other consequences for giving false information") (quoting *United States v. Gondres-Medrano*, 3 F.4th 708, 715 (4th Cir. 2021)). Nevertheless, investigators did not only rely on these statements but also further corroborated them through a subsequent investigation.

*(2) Expert Witnesses*

The Petitioner asserts that the Magistrate Judge erred as it relates to the United States' expert witnesses. He asserts that the United States' experts were not qualified and that Mr. Lafon either failed to object or to conduct further inquiry into their backgrounds.[13] Reviewing the record, beginning with Mr. Varela, the Court finds that Mr. Lafon questioned him regarding his background and qualifications *and* objected to him being qualified as an expert. This Court, however, overruled his objection, finding that based on his responses to Mr. Lafon's questioning, he was qualified to be an expert based on his experience and training in retail crime investigations. As it relates to Mr. Shelton, he was never qualified as an expert witness, and Mr. Lafon objected to questioning that would have elicited an opinion from him, which the Court sustained. (Document 184 at 357:22-358:19.) Turning to Mr. Niehaus, although Mr. Lafon did not question him regarding his qualifications and background nor object to his qualification as an expert, the Court's previous ruling finding experience sufficient to qualify an expert as it related to Mr. Varela likely rendered any such objection futile.[14] Mr. Lafon's performance related to the qualification of the expert witnesses was not deficient.

Next, the Petitioner asserts that Mr. Lafon was ineffective for failing to request a jury instruction regarding expert witness bias.[15] The Fourth Circuit has adopted a two-step inquiry in determining whether an attorney was ineffective for failing to request a jury instruction: "(1)

[13] The Petitioner also contends that Mr. Varela had never been qualified as an expert in prior litigation. However, given Mr. Varela's experience, the fact that he had never previously been qualified as an expert is irrelevant. Moreover, Mr. Lafon questioned Mr. Varela about never previously being qualified as an expert on cross-examination.

[14] The Fourth Circuit considered the Petitioner's arguments related to Mr. Varela and Mr. Niehaus being qualified as experts and rejected them, finding that this Court did not abuse its discretion in permitting them to testify as experts given their "substantial experience in conducting retail crime investigations." *United States v. Vladimirov*, No. 22-4049, 2023 WL 2535263, at *6 (4th Cir. Mar. 16, 2023).

[15] He also asserts that Mr. Lafon failed to cross-examine the expert witnesses regarding potential bias related to their employment with the retailers that had products stolen.

whether the instruction, if requested, should have been given; and (2) if the instruction had been given, was there a reasonable probability that the outcome of the proceedings would have been different." *Hope v. Cartledge*, 857 F.3d 518, 523 (4th Cir. 2017) (quoting *United States v. Luck*, 611 F.3d 183, 189 (4th Cir. 2010)). Given Mr. Lafon's questioning of the witnesses during cross-examination about their loyalty to their employers, (Document 184 at 328:20-329:9, 360:8-20), and the Court's instruction regarding witness bias, the Court finds that the Petitioner's proposed instruction would have been unnecessary. Regardless, and for similar reasons, there is no reasonable probability it would have changed the outcome of the proceedings. Mr. Lafon was not ineffective in failing to request the Petitioner's proposed jury instruction.

Lastly, the Petitioner contends that Mr. Lafon was ineffective by failing to object to statements by the expert witnesses that opined on the ultimate issue. The Petitioner points to the statement by Mr. Varela that "[a]ll of these factors put together, I'm able to easily determine that Mr. Vladimirov was, in fact, running a fencing operation," and Mr. Niehaus agreeing that his "conclusions concerning whether this was a fencing operation [were] based to a reasonable degree of certainty in [his] field."[16] These statements represent the opinions of the expert witnesses, based on their experience as retail crime investigators, that the Petitioner's conduct was consistent with a fencing operation. Mr. Lafon was not ineffective for failing to object to these statements of opinion by the expert witnesses and because Mr. Lafon was not ineffective or deficient regarding the expert witnesses, the Petitioner's objections should be overruled.

[16] Prior to making this statement, Mr. Varela outlined aspects of the investigation that ultimately led to this conclusion.

*(3) Summary Charts*

The Petitioner asserts that Mr. Lafon failed to object to the summary charts containing the number of items sold on his eBay account that he bought from each of the confidential informants despite the charts being prejudicial. However, the Court finds that the Petitioner's argument related to the summary charts is contradicted by the record. The record indicates that Mr. Lafon objected to the names of the informants and the time periods being included in the charts before they were admitted into evidence. (Document 184 at 376:1-377:11, 378:15-379:3, 380:6-15, 381:20-382:4.) The Court sustained the objection in part, permitting only summary charts that omitted the confidential informants' names[17] and represented the number of items sold on the Petitioner's eBay accounts during certain time periods to be admitted. (Document 184 at 376:1-377:11, 378:15-379:3, 380:6-15, 381:20-382:4.) Thus, the Petitioner's objection is refuted by the record and must be overruled.

*C. Failure to Present Exculpatory Evidence*

The Petitioner claims that Mr. Lafon was deficient in failing to present evidence of his tax payments, contending that it "is directly relevant to whether he intended to conceal the nature of the funds" because "[a] person who reports income to the IRS and pays taxes on it is not attempting to conceal that income." (Objs. at 5.) However, as Judge Aboulhosn determined, "the fact that Movant paid income taxes on illegally obtained money does not provide a defense to a money laundering charge." (PF&R at 22.) The Court agrees with Judge Aboulhosn's finding and the Petitioner therefore is unable to demonstrate that Mr. Lafon was deficient in failing to present

[17] The Court notes that the summary charts filed by the Petitioner may have differed slightly from the ones submitted by the United States during trial. The charts filed by the Petitioner contain the term "stolen" after the term "item," which was not included in the charts submitted by the United States.

evidence of his tax payments or that he was prejudiced by the same. This objection should be overruled.

*D. Failure to Impeach Witnesses*

The Petitioner argues that Mr. Lafon failed to impeach the Government's witnesses with inconsistent statements found in the grand jury testimony and the Government's memoranda, as well as with their prior convictions. He asserts that Mr. Lafon failed to question the confidential informants about their pre-trial coaching, contending that "[t]he jury never learned that the government had 'refreshed' the witnesses' memories to increase their estimates and align their testimony with the prosecution's case." (Objs. at ¶ 40.)

The Court finds that the Petitioner's objections are without merit. Reviewing the cross-examination of the confidential informants demonstrates that Mr. Lafon utilized their grand jury testimony and the Government's memoranda to impeach them with their inconsistent statements.[18] Mr. Lafon also questioned the confidential informants about their meetings with the government in an attempt to demonstrate how their testimony changed after those meetings.[19] Too, he questioned them about receiving favorable treatment in exchange for their testimony to show

[18] Contrary to the Petitioner's contentions, the trial testimony reveals that Mr. Lafon used the grand jury testimony and pre-trial interview memoranda to impeach Ms. Wentz and Mr. Anderson. (Document 183 at 191:19-192:2, 197:3-18, 217:25-218:10.) As it relates to Mr. Martin, Mr. Lafon also utilized his grand jury testimony to demonstrate that Mr. Martin was unable to locate an assertion he made during his trial testimony, which is also contrary to the Petitioner's contention that Mr. Lafon was unprepared and failed to utilize grand jury testimony. (*Id.* at 131:19-133:15.) Moreover, Mr. Lafon further utilized Mr. Martin's pre-trial interview memoranda to impeach him. (*Id.* at 136:8-139:22.)

[19] Specifically, he asked Ms. Wentz and Mr. Martin if their meetings with the U.S. Attorney's Office prompted their memory and therefore led to the increase in the number of times they met with the Petitioner. (Document 183 at 130:22-131:9, 218:8-10.)

possible bias.[20] Mr. Lafon asked the confidential informants about their criminal history,[21] as well as their drug use.[22] His use of impeachment materials and his lines of questioning demonstrate his effective representation and his strategy in attempting to undermine the witnesses' credibility.

The Petitioner argues Mr. Lafon failed to utilize certain inconsistent statements for impeachment purposes. To the extent that Mr. Lafon did not impeach the confidential informants utilizing certain inconsistent statements identified by the Petitioner, such failure could be attributed to Mr. Lafon's trial strategy rather than ineffective assistance. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984) (explaining that a "defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (internal quotations omitted). For example, the Petitioner asserts that Mr. Lafon failed to utilize for impeachment purposes Mr. Hatfield's pre-trial statements, including "Ned was a regular fence," "Ned would generally pay 30% of the eBay value," and "Ned knew the items were stolen."[23] (Objs. at 33, 36.) However, Mr. Lafon likely refrained from impeaching him with such prior inconsistent statements because doing so would have highlighted those statements to the jury. Mr. Lafon's failure to use those statements does not demonstrate that he was ineffective.

[20] Specifically, Mr. Lafon asked each of the confidential informants if they were cooperating in return for not being charged and pointed out that they had not been charged. (Document 183 at 139:23-140:12, 161:13-162:6, 202:13-203:12, 221:3-17.) Moreover, he even elicited testimony from Mr. Martin, agreeing that he would not have testified unless he received a signed immunity agreement. (*Id.* at 140:9-12.)

[21] Mr. Lafon asked each of the confidential informants except Mr. Martin about their criminal history. Specifically, he asked Mr. Hatfield about his theft-related crimes, (161:8-12), and Ms. Wentz if she had grand larceny and other theft-related convictions. (218:24-219:4.) In addition, he asked whether Mr. Anderson already admitted on direct that he has an extensive criminal history. (189:22-24.)

[22] Mr. Lafon asked each of the confidential informants about their drug use and questioned those informants who changed their testimony about the number of times they met with the Petitioner about how their drug use affected their memory.

[23] Additionally, he also asserted that Mr. Lafon failed to impeach Agent Hedrick with a similar statement made during his grand jury testimony that "Vladimirov knows that the items he's receiving from boosters are stolen." (Objs. at 36.)

The Petitioner also argues that Mr. Lafon failed to impeach the confidential informants with certain prior felony convictions. To the extent that Mr. Lafon failed to impeach the confidential informants with their prior convictions,[24] it does not automatically mean he was ineffective. *See Koon v. Rushton*, 364 Fed.Appx. 22, 28-29 (4th Cir. 2010) (finding the defendant failed to demonstrate that his attorney was ineffective by failing to impeach a witness "with evidence that he had twice been convicted of giving false statements to the police" given that his attorney utilized a different strategy to call into question the witness's credibility); *Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986) (finding that counsel was not deficient despite failing to investigate, discover, and utilize a witness's criminal record to impeach the witness because the witness's criminal record consisted of two misdemeanor convictions for obtaining goods with worthless checks, which do not implicate the witness's "testimonial untrustworthiness"*); see also Strickland*, 466 U.S. at 689. The vast majority of the confidential informants' prior convictions do not implicate their credibility,[25] and Mr. Lafon utilized other methods, as demonstrated above, to call their credibility into question. Clearly, Mr. Lafon was not ineffective in failing to impeach or properly cross-examine the confidential informants and the Petitioner's objections should be overruled.

[24] As previously mentioned, Mr. Lafon asked the confidential informants, with the exception of Mr. Martin, about their criminal history.

[25] Most of the confidential informants' prior convictions consist of theft and drug related offenses. Given that these convictions do not necessarily implicate their credibility, Mr. Lafon was not ineffective because he failed to impeach the confidential informants with these prior convictions. Moreover, the jury was aware that the confidential informants were shoplifters and drug addicts. Although the Petitioner indicates that Mr. Hatfield has multiple worthless check convictions, as the Fourth Circuit determined in *Hoots*, worthless check convictions do not give rise to a comparable implication of a witness's untrustworthiness when compared to a crime like perjury that directly calls credibility into question. *Hoots*, 785 F.2d at 1221.

*E. Failure to Ensure Impartial Jury*

The Petitioner asserts that Mr. Lafon failed to protect his right to an impartial jury.[26] However, the record makes clear that he acted in the Petitioner's best interest and ensured that an impartial jury was selected. Specifically, Mr. Lafon moved to strike for cause Juror 2 over concerns about her reading newspaper articles about the case, which this Court granted.[27] Additionally, he moved to strike for cause Jurors 20, 21, and 22.[28] Although this Court denied those motions, Mr. Lafon later used strikes to remove prospective jurors that the Petitioner contends could have been biased. Obviously, Mr. Lafon was not ineffective in representing the Petitioner during jury selection. This objection should be overruled.

*F. Denial of Right to Speedy Trial*

The Petitioner asserts that the Magistrate Judge erred in dismissing his speedy trial claim because it "ignored the complexity of this issue."[29] (Objs. at 17.) As Judge Aboulhosn correctly noted, this Court previously considered and denied the Petitioner's *pro se* motion asserting his right to a speedy trial after Mr. Lafon requested the Court to consider the motion, and on appeal, the Fourth Circuit affirmed, finding no speedy trial violation. The record, therefore, reveals that

[26] Specifically, he argues that several jurors who expressed bias were kept on the panel, that the Court denied Mr. Lafon's challenges to Jurors 20, 21, 22, who had law enforcement connections and money laundering experience, that the Court excused Juror 2 for reading newspaper articles without inquiring into whether other jurors did the same, and that Mr. Lafon only filed a few meritless challenges for cause, without objecting to the composition of the final jury.
[27] To the extent the Petitioner asserts that Mr. Lafon was ineffective for failing to ask the Court to inquire whether other jurors also read news articles, the Court had asked the jurors whether they had heard anything about the case, which none of the jurors, except Juror 2, answered in the affirmative. (Document 182 at 26:25-28:5.)
[28] Mr. Lafon also moved to strike for cause Juror 31 due to concerns about her employment in asset protection with Wal-Mart, but he later withdrew his motion after a further inquiry revealed that her employment required her to follow the facts before making a determination about whether a person had engaged in theft. (Document 182 at 68:23-76:11.)
[29] The Petitioner specifically asserts that the United States moved to dismiss Count 5 of the Superseding Indictment without prejudice during the first day of trial, and that although Mr. Lafon objected to dismissal "without prejudice," rather than "with prejudice," which "shows that [Mr. Lafon] was actively engaged in protecting [the Petitioner's] rights, the Court's ruling allowing for dismissal without prejudice arguably prejudiced the Petitioner. (Objs. at 16-17.)

Mr. LaFon brought the motion to the Court's attention and was not ineffective in failing to assert the Petitioner's Speedy Trial rights. This objection must be overruled.

*G. Cumulative Error*

The Petitioner asserts that the Magistrate Judge failed to analyze the cumulative effect of Mr. Lafon's deficiencies to determine whether the cumulative impact deprived him of effective assistance of counsel. He further relies on this Court's Memorandum Opinion (Document 121) to demonstrate that Mr. Lafon did not provide effective assistance, arguing that the Court summarized his complaints and denied the motion solely on the ground that it was "untimely." He relies on the hearing related to Mr. Lafon's motion to withdraw, asserting that Mr. Lafon moving to withdraw following his complaints demonstrates that he was not satisfied with Mr. Lafon's representation, that Mr. Lafon recognized the breakdown, that Mr. Lafon had a direct conflict of interest in that he was accused of being a double agent, and that Mr. Lafon provided him with only 40 pages of discovery.

To the extent the Plaintiff attempts to rely on this Court's Memorandum Opinion (Document 121) and the hearing related to Mr. Lafon's motion to withdraw to demonstrate constitutional error, the attempt falls short. In direct contradiction with the Petitioner's assertion, the Court's ruling on the motion to withdraw was not based solely on the motion's untimeliness. Rather, the Court concluded that the Petitioner had effective representation with Mr. Lafon and that they were able to communicate effectively with each other. (Document 121 at 3-4) (Document 182 at 12:21-13:16, 15:9-16:8.) Despite the Petitioner's statements about Mr. Lafon, the Court found the Petitioner failed to present any evidence or examples that would suggest Mr. Lafon was ineffective, and that none of his "assertions reflected ineffective or inadequate representation,"

given that an attorney is not required to file baseless motions at their client's request and it is their role to provide recommendations to their client based on their legal knowledge and experience. (Document 121 at 4.) In addition, the Court found it appeared that the Petitioner "was simply attempting to select counsel of his choosing." (*Id.* at 3.) Moreover, despite the Petitioner's assertions that Mr. Lafon only provided him with 40 pages of discovery and did not prepare him for trial, as Judge Aboulhosn outlined, the record reflects that the Petitioner was adequately prepared given his testimony during trial. The Court finds that the Petitioner has failed to demonstrate that any aspect of Mr. Lafon's representation could be considered constitutional error.

The Court finds that the Petitioner's cumulative effect analysis is foreclosed as a matter of law. *See Fisher v. Angelone*, 163 F.3d 835 852 n.9 (4th Cir. 1998) (explaining that "an error of constitutional magnitude occurs in the Sixth Amendment context only if the defendant demonstrates (1) deficient performance *and* (2) prejudice" and that "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient") (citation omitted). Given that this Court has not found any constitutional errors with Mr. Lafon's performance when reviewing the Petitioner's claims individually, it, therefore, is not required to evaluate whether the cumulative effect of Mr. Lafon's alleged deficiencies deprived him of effective assistance.

*H. Denial of Evidentiary Hearing*

The Court finds that Judge Aboulhosn did not err in denying an evidentiary hearing. As he correctly explained, a hearing is not required to resolve a § 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because it is clear from the record, as well as the parties' submissions, that the

Petitioner is not entitled to any relief, the Court finds that an evidentiary hearing is not warranted. The Petitioner's objection related to the need for a hearing should be overruled.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Objections to Proposed Findings and Recommendation* (Document 250) be **OVERRULED**, that the *Proposed Findings and Recommendation* (Document 245) be **ADOPTED** and incorporated herein, and that the Petitioner's *Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody* (Document 220) be **DENIED**.

The Court **ORDERS** that this civil action be **DISMISSED, with prejudice**, and **REMOVED** from the docket. Any pending motions are hereby **TERMINATED** as moot.

The Court has considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court concludes that the governing standard is not satisfied in this instance. Accordingly, the Court **DENIES** a certificate of appealability.

The Court **DIRECTS** the Clerk to send a copy of this Order to Magistrate Judge Aboulhosn, to counsel of record, and to any unrepresented party.

ENTER: September 10, 2026

Irene C. Berger

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA